UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

DERRICK STORMS, ADRIAN BATLLE, A1
PROCUREMENT, LLC, A1 PROCUREMENT
JVH, A1 PROCUREMENT – TRANSPORTATION
LEASING CORP. LLC, and A1 PROCUREMENT,
JVG,

                              Plaintiffs,

                    v.

UNITED STATES OF AMERICA, DEPARTMENT
OF VETERANS AFFAIRS, ERIC K. SHINSEKI,
SCOTT W. GOULD, JOHN R. GINGRICH,
DAVID H. ECKENRODE, THOMAS J. LENEY,
JAN R. FRYE, WILLIAM A. COX, GREGORY
VOGT, ERNEST MONTELEONE, DELIA
ADAMS, JOHN FEDKENHEUER, DENNIS
FOLEY, JUSTINA HAMBERG, JAYSAN
HWANG, ANDREA M. GARDNER-INCE,
SUPERVISORS OF THE 8127 DEBARMENT
COMMITTEE, SUPERVISORS OF THE CENTER
FOR VETERANS ENTERPRISE, and JOHN/JANE
DOES 1–100,

                              Defendants.

-------------------------------------------------------------

**MEMORANDUM & ORDER**
13-CV-811 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiffs Derrick Storms, Adrian Batlle, A1 Procurement, LLC, A1 Procurement JVH,

A1 Procurement-Transportation Leasing Corp., LLC and A1 Procurement, JVG commenced this

action against Defendants the United States of America, Department of Veterans Affairs ("VA"),

Eric K. Shinseki, Scott W. Gould, John R. Gingrich, David H. Eckenrode, Thomas J. Leney, Jan

R. Frye, William A. Cox, Gregory Vogt, Ernest Monteleone, Delia Adams, John Fedkenheuer,

Dennis Foley, Justina Hamberg, Jayson Hwang, Andrea M. Gardner-Ince, Supervisors of the

8127 Debarment Committee, Supervisors of the Center for Veterans Enterprise and unknown

employees of the VA, "John and Jane Does 1–100," asserting claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Federal Tort Claims Act ("FTCA"), the Declaratory Judgment Act and the Administrative Procedures Act ("APA"). (Second Am. Compl. ("SAC") ¶¶ 142–186, Docket Entry No. 47.)  Defendants moved to dismiss Plaintiffs' claims, and, by Memorandum and Order dated March 16, 2015 (the "March 16, 2015 Decision"), the Court granted Defendants' motion to dismiss the Second Amended Complaint and granted Plaintiffs leave to file a third amended complaint.[1]  *Storms v. United States*, No. 13-CV-811, 2015 WL 1196592, at *11–12 (E.D.N.Y. Mar. 16, 2015).  Plaintiffs now move for reconsideration of the March 16, 2015 Decision and, specifically, the dismissal of Plaintiffs' *Bivens* claims.  (Pls. Notice of Mot. for Recons. ("Pls. Mot."), Docket Entry No. 106; Pls. Mem. in Supp. of Pls. Mot. ("Pls. Mem."), Docket Entry No.107.)  In the alternative, Plaintiffs ask the Court to certify an interlocutory appeal.  (Pls. Mot. 1.)  For the reasons set forth below, the Court declines to reconsider the March 16, 2015 Decision as to Plaintiffs' *Bivens* claims and to certify an interlocutory appeal.

## I.  Background

The Court assumes familiarity with the underlying facts as set forth in the March 16, 2015 Decision.  *See Storms*, 2015 WL 1196592, at *1–4.  Only the facts necessary to decide Plaintiffs' motion for reconsideration are set forth below.[2]

---

[1]  The Court permitted Defendants to amend the Second Amended Complaint as to certain claims under RICO, the Declaratory Judgment Act, and the Administrative Procedures Act.  *Storms v. United States*, No. 13-CV-811, 2015 WL 1196592, at *26–28 (E.D.N.Y. Mar. 16, 2015).

[2]  The facts included here are taken from the Second Amended Complaint ("SAC").

### a. A1 Procurement's inclusion and subsequent removal from vendor database

On or about April 7, 2010, the Center for Veterans Enterprise's ("CVE"), an office of the VA, granted A1 Procurement, LLC's ("A1") application for inclusion in the VA's Vendor Information Pages ("VIP") database.[3] (SAC ¶ 37.) In granting the application, the CVE determined that A1 was owned and controlled by Storms, a service-disabled veteran, A1's Chief Executive Officer ("CEO") and a 51% majority owner of A1, and that A1 was a "qualified Service-Disabled Veteran-Owned Small Business" ("SDVOSB"). (*Id.*)

Over a year later, on April 25, 2011, Storms criticized Defendant Eckenrode, a CVE employee, for failing to remove unverified contractors from the VIP database as required by statute, and a "personal feud ensued." (SAC ¶¶ 38–39.) Thereafter, Eckenrode became Deputy Director of the CVE. (SAC ¶ 40.)

On August 9, 2011, Eckenrode removed A1 from the VIP database (the "CVE Removal Decision"). (SAC ¶ 41.) According to Plaintiffs, this was an "abuse" of Eckenrode's position, as there was no "good cause" for the CVE Removal Decision. (*Id.*) The basis for the CVE Removal Decision was Storms' simultaneous appointments as CEO of A1, President of Homeless Veterans of America, Inc. and managing partner of Storms and Associates, P.A., a law firm. (SAC ¶ 42.) The CVE "unscrupulously" decided that, in light of Storms' other responsibilities to other organizations, the CVE could not determine whether Storms controlled A1. (SAC ¶ 46.) Plaintiffs contend that the CVE Removal Decision was made without "any clear evidence of disqualification of eligibility in the VIP database" and was instead intentionally made in retaliation for the feud between Storms and Eckenrode in violation of Plaintiffs' Fifth

---

[3] The VIP database includes all SDVOSBs and Veteran Owned Small Businesses ("VOSBs") that are verified to be at least 51% "owned and controlled" by a veteran or service-disabled veteran. (SAC ¶ 37.)

Amendment substantive due process rights.  (SAC ¶¶ 48–49.)

### b.  A1's request for reconsideration of the CVE Removal Decision

On August 23, 2011, A1 requested reconsideration of the CVE Removal Decision (the "Reconsideration Request").  (SAC ¶ 52.)  Plaintiffs contend that when A1 contacted the CVE about the Reconsideration Request, the CVE "intentionally misrepresented that it had not received" the Reconsideration Request in order to "intentionally inflict severe emotional distress" on Plaintiffs Storms and Batlle.  (SAC ¶ 58.)  Storms had previously notified United States Senator Marco Rubio of the Reconsideration Request, and, after the CVE denied receiving it, Storms contacted Senator Rubio again, telling him about the CVE's "unethical and bad faith conduct."  (SAC ¶¶ 53, 60–61.)  Senator Rubio's office contacted the CVE, and the CVE subsequently "changed its position and stated that it had timely received [the Reconsideration Request]" and would make a decision no later than October 28, 2011.  (SAC ¶¶ 60–61.)  Plaintiffs allege that the CVE failed to render a decision by October 28, 2011, which violated Plaintiffs' procedural due process rights by denying A1 "a meaningful process to review and respond to" the CVE Removal Decision.  (SAC ¶¶ 62–63.)  Over two years later, after being ordered to respond by this Court, (SAC ¶ 63 (citing Minute Entry dated Aug. 9, 2013)), the CVE denied the Reconsideration Request (the "Reconsideration Decision"), (SAC ¶¶ 131–32).

### c.  Debarment

A1 contacted Senator Rubio's office to complain about the CVE's delay in acting on the Reconsideration Request, and thereafter, the VA unlawfully issued proposed debarment notices to Storms, Batlle and A1.  (SAC ¶ 69.)  According to the notices, the VA was initiating debarment proceedings against them for "allegedly misrepresenting A1's SDVOSB status" in connection with a bid for a government contract.  (*Id.*)  Storms contacted Defendant Cox, a VA

employee and a contact person for the VA's 8127 Debarment Committee (the "Committee"), which was considering debarment of Storms, Batlle and A1.  (SAC ¶ 71.)  When Cox informed Storms that the Committee was considering "additional information not provided in the [d]ebarment [n]otices," Storms told Cox that they had a "legal right to review and respond to any additional allegations not provided in the [d]ebarment [n]otices," and that failure to provide additional allegations violated their procedural due process rights.  (*Id.*)  Defendants refused to allow Storms, Batlle and A1 to review the additional allegations.  (SAC ¶ 72.)

On May 2, 2012, Defendant Frye issued notices of debarment to Storms, Batlle and A1, "debarring each for five (5) years from government-wide contracting with any federal agency," (the "Debarment").  (SAC ¶ 74.)  Plaintiffs allege that the notices they received about the Debarment included grounds not previously included in the original notice of the Debarment. (SAC ¶ 77.)  Plaintiffs also allege that Defendants "intentionally and unlawfully publicly humiliated" Storms, Batlle and A1 by posting their names on the Committee's website.  (SAC ¶¶ 75–76.)  Plaintiffs contend that by debarring them from all federal agencies "on unlawful, unjustifiable and impermissible grounds," Defendants exceeded their jurisdiction and authority. (SAC ¶¶ 84, 89.)  On February 19, 2013, the VA vacated the Debarment.[4]

### d.  Bus Contract

Plaintiffs allege that after the Debarment, Defendant Vogt refused to pay Plaintiffs as required under a preexisting contract for a lease of Plaintiffs' bus (the "Bus Contract").  (SAC ¶¶ 26–27, 123.)  Defendant Foley, the VA's legal counsel, instructed Vogt and Defendant

---

[4]  Plaintiffs allege that Defendants inflicted further "severe" emotional distress by stating in a submission to the Court that the VA was "presently considering whether to recommence debarment proceedings, and is refraining from ruling on the reconsideration pending that decision and any future debarment proceedings against Plaintiffs."  (SAC ¶ 83.)

Monteleone not to pay Plaintiffs until Foley approved it. (SAC ¶ 125.) On August 9, 2013, the

Court instructed Defendants to pay Plaintiffs for using the para-transit bus, but Plaintiffs contend

that Defendants have refused to pay because Plaintiffs have not submitted invoices directly to the

VA.[5] (SAC ¶ 126.)

## II. Discussion

### a. Standards of review

#### i. Reconsideration

The standard for granting a motion for reconsideration is strict, and "[r]econsideration

will generally be denied unless the moving party can point to controlling decisions or data that

the court overlooked — matters, in other words, that might reasonably be expected to alter the

conclusion reached by the court." *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.,*

*Ltd.*, --- F. App'x ---, ---, 2015 WL 5999215, at *3 (2d Cir. Oct. 15, 2015) (quoting *Shrader v.*

*CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)); *Bank of Am. Nat. Ass'n v. AIG Fin. Prods.*

*Corp.*, 509 F. App'x 24, 27 (2d Cir. 2013) ("The standard for granting such a motion is

strict . . . ." (quoting *Shrader*, 70 F.3d at 257)), *as amended* (Apr. 5, 2013); *see also* Local Civ.

R. 6.3 (The moving party must "set[] forth concisely the matters or controlling decisions which

counsel believes the Court has overlooked."); *Smith v. N.Y.C. Dep't of Educ.*, 524 F. App'x 730,

734 (2d Cir. 2013) ("To warrant reconsideration, a party must 'point to controlling decisions or

data that the court overlooked — matters, in other words, that might reasonably be expected to

alter the conclusion reached by the court.'" (quoting *Shrader*, 70 F.3d at 257)).

---

[5] At oral argument on Defendants' motion to dismiss, Storms, as counsel for Plaintiffs, asserted that, although the VA had since made payments pursuant to the Bus Contract, Plaintiffs had not been paid for all damages arising out of the Bus Contract claim, including attorney's fees and accrued interest. (Sept. 23, 2014 Hr'g Tr. 6:10–20); *Storms*, 2015 WL 1196592, at *4 n.5.

It is thus "well-settled" that a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)), *as amended*, (July 13, 2012). A motion for reconsideration is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made." *Simon v. Smith & Nephew, Inc.*, 18 F. Supp. 3d 423, 425 (S.D.N.Y. 2014) (citation and internal quotation marks omitted). In order to prevail on a motion for reconsideration, "the moving party must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion." *Lichtenberg v. Besicorp Grp. Inc.*, 28 F. App'x 73, 75 (2d Cir. 2002) (citations and internal quotation marks omitted); *see also Henderson v. City of New York*, No. 05-CV-2588, 2011 WL 5513228, at *1 (E.D.N.Y. Nov. 10, 2011) ("In order to have been overlooked, the decisions or data in question must have been put before [the court] on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." (alterations in original) (citations and internal quotation marks omitted)); *cf. Stoner v. Young Concert Artists, Inc.*, No. 11-CV-7279, 2013 WL 2425137, at *1 (S.D.N.Y. May 20, 2013) ("A motion for reconsideration is an extraordinary remedy, and this Court will not reconsider issues already examined simply because a party is dissatisfied with the outcome of his case. To do otherwise would be a waste of judicial resources." (alteration, citations and internal quotation marks omitted)).

### ii. Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)); *see also Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

### b. Plaintiffs are not entitled to reconsideration

#### i. Bus Contract Claim

In the March 16, 2015 Decision, the Court dismissed Plaintiffs' *Bivens* claims that were based on the VA's nonpayment under the Bus Contract (the "Bus Contract Claim"),[6] finding

---

[6] In *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *See Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (citation omitted). While *Bivens* created a private cause of action, "the Supreme Court has narrowed the reach of that principle, explaining that the recognition of such a cause of action 'is not an automatic entitlement,' but must instead 'represent a judgment about the best way to implement a constitutional guarantee.'" *Atterbury v. U.S. Marshals Serv.*, --- F.3d ---, ---, 2015 WL 6684236, at *3 (2d Cir. Nov. 3, 2015) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550

that, consistent with the Second Circuit's decision in *M.E.S. v. Snell*, 712 F.3d 666 (2d Cir. 2013), a *Bivens* claim was not viable in light of the fact that the "comprehensive remedial scheme afforded to Plaintiffs under the [Contract Disputes Act ("CDA")]" was an "'alternative, existing process' for protecting' Plaintiffs' interest in the Bus Contract." *Storms*, 2015 WL 1196592, at *12 (quoting *Snell*, 712 F.3d at 671). In support of their motion for reconsideration, Plaintiffs argue that the Court (1) improperly raised new arguments *sua sponte*, (2) misapplied the Second Circuit's holding in *Snell* and (3) failed to apply the correct legal standard to Plaintiffs' allegations regarding the Bus Contract Claim. (Pls. Mem. 5–10.) As discussed below, although asserted as separate arguments, Plaintiffs merely make the same or new arguments about the central issue resolved in the Court's March 16, 2015 Decision: whether Plaintiffs' *Bivens* claim based on the Bus Contract was precluded by the "alternative, existing process" established by the CDA. *Storms*, 2015 WL 1196592, at *11–12. As discussed below, because Plaintiffs' arguments do not present any facts or controlling law that the Court overlooked, reconsideration is not warranted.

---

(2007)). Accordingly, courts faced with purported *Bivens* claim must apply a two-part test to determine whether to extend *Bivens* into a new context: "First, a court must determine 'whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Id.* at ---, 2015 WL 6684236, at *3 (quoting *Wilkie*, 551 U.S. at 550). "Second, even in the absence of such an alternative process, a court 'must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation.'" *Id.* at ---, 2015 WL 6684236, at *3 (quoting *Wilkie*, 551 U.S. at 550). "The *Bivens* remedy is an extraordinary thing that should rarely if ever be applied in new contexts," *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d. Cir. 2009) (citations and internal quotation marks omitted), and "[t]his two-part test has only rarely yielded a new *Bivens* remedy; indeed, the Supreme Court has extended *Bivens* to contexts other than unreasonable searches and seizures only twice, most recently thirty-five years ago in *Carlson v. Green*, 446 U.S. 14 (1980)," *Atterbury*, --- F.3d at ---, 2015 WL 6684236, at *3.

**1. The Court did not raise arguments *sua sponte* in dismissing Plaintiffs' *Bivens* claim based on the Bus Contract**

In the March 16, 2015 Decision, the Court recognized that, to decide whether Plaintiffs stated a *Bivens* claim and whether the extension of *Bivens* remedies to the context presented by Plaintiffs' case was appropriate, the Court was required to: (1) "assess 'whether any alternative, existing process for protecting the [constitutionally recognized] interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding damages remedy," and (2) "make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed . . . to any special factors counseling hesitation . . . ." *Storms*, 2015 WL 1196592, at *7 (first two alterations in original) (internal quotation marks omitted) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)); (*see* Defs. Mem. in Supp. of Mot. to Dismiss ("Defs. MTD Mem.") 12 (citing *Wilkie*, 551 U.S. at 577), Docket Entry No. 65.)

Seeking reconsideration, Plaintiffs argue that the March 16, 2015 Decision improperly raised legal arguments *sua sponte* in refusing to extend *Bivens* to Plaintiffs' Bus Contract claim and dismissing that claim as barred by the CDA. (Pls. Mem. 5–6.) In support of their argument, Plaintiffs point to footnote sixteen in the Court's March 16, 2015 Decision. (*Id.*) Plaintiffs assert that while Defendants argued that Plaintiffs' Bus Contract claim failed the second prong of the *Bivens* test — whether there are "special factors" counseling hesitation in creating a *Bivens* remedy — the Court *sua sponte* raised a new argument in holding that the Bus Contract claim failed at the first prong — whether the CDA was an alternative existing process precluding a *Bivens* claim based on the Bus Contract.[7] (Pls. Mem. 5 (citing *Storms*, 2015 WL 1196592, at

---

[7] Footnote sixteen of the March 16, 2015 Decision stated:

> Although Defendants appear to argue that Plaintiffs' Bus Contract claim should be dismissed under the second prong of the *Bivens* test — whether there are "special factors" counseling hesitation in

*12 n.16).)  According to Plaintiffs, through this ruling, "[t]he Court dismissed Plaintiffs' *Bivens*

claims relating to the Bus Contract based on a legal argument not raised by the Defendants or the

Court." (*Id.*)  As discussed below, Plaintiffs misconstrue the record, and their argument does not

provide a basis to grant their motion for reconsideration of the Court's March 16, 2015 Decision.

In support of their motion to dismiss, Defendants argued that Plaintiffs could not bring a

*Bivens* claim for the Bus Contract in light of the CDA's alternative, existing process for

addressing the Bus Contract claim.  (Defs. MTD Mem. 13–14.)  Defendants characterized this

argument as one related to the "special factors" that "counsel hesitation" in extending *Bivens*.

(Defs. MTD Mem. 13 ("Among the 'special factors' that 'counsel hesitation' is the existence of a

comprehensive statutory remedial scheme concerning the subject matter of the action.").)

Despite that characterization, Defendants argued in their motion papers that "to the extent [the

Bus Contract claim] is based on Plaintiffs' allegation that they have not been paid amounts due

under the Bus Contract, Plaintiffs' *Bivens* claim is barred by the comprehensive remedial scheme

of the CDA and should be dismissed pursuant to [Rule] 12(b)(1) or [Rule]12(b)(6) [of the

Federal Rules of Civil Procedure]."  (*Id.* at 14 ("The CDA governs Plaintiffs' rights to recover

for any amounts owed them under the Bus Contract.").)

Opposing Defendants' motion, Plaintiffs directly addressed Defendants' comprehensive

remedial scheme argument, stating, "Defendants' obsession to recharacterize [*sic*] the

Debarment's termination of the [B]us [C]ontract into a government contract dispute is a tactic

designed to have this Court believe that the [CDA] precludes *Bivens*."  (Pls. Mem. in Opp'n to

---

creating a *Bivens* remedy — the Court dismisses Plaintiffs' Bus
Claim as precluded by the CDA under the first prong of the *Bivens*
test.    This  approach  is  consistent  with  the  Second  Circuit's
approach in *Snell.*
*Storms*, 2015 WL 1196592, at *12 n.16 (internal citations omitted).

Defs. Mot. to Dismiss ("Pls. MTD Opp'n") 21, Docket Entry No. 66.) According to Plaintiffs, because the "essence" of the claims were Defendants' "constitutional violations," the CDA did not preclude their *Bivens* claims. (*Id.* at 25–26.) Indeed, Plaintiffs explicitly argued that "the CDA does not preclude *Bivens* from addressing the Debarment's termination of the [B]us [C]ontract." (*Id.* at 26.)

Given the parties' differing positions, whether the CDA precluded Plaintiffs' *Bivens* claims based on the Bus Contract was a central issue addressed at the oral argument of Defendants' motion to dismiss, and the parties vigorously argued about the preclusion or non-preclusion of Plaintiffs' *Bivens* claim based on the CDA. (*See generally* Sept. 23, 2014 Hr'g Tr. 22:4–33:16; *id* at 8:18–21 ("[Defendants:] [A] *Bivens* remedy is not appropriate because of the CDA, a comprehensive remedial scheme enacted by Congress as to the bus contract and because of the APA."); *id.* at 22:4–5 ("[Plaintiffs:] [T]he Contract Dispute Act, does not preclude *Bivens* . . . .").)

Although Plaintiffs now argue that the question of whether the CDA provided a comprehensive remedial scheme precluding *Bivens* was raised *sua sponte* in the Court's March 16, 2015 Decision, a simple review of the parties' briefs and arguments belies that assertion. At each stage of litigating the motion to dismiss, all parties addressed whether the CDA was a pre-existing comprehensive remedial scheme precluding *Bivens*. (Defs. MTD Mem. 11–16; Pls. MTD Opp'n 21–26; Sept. 23, 2014 Hr'g Tr. 22:4–33:16.) Plaintiffs had ample notice of Defendants' arguments and responded vigorously to those arguments, and their instant claim that the Court somehow improperly raised these arguments *sua sponte* is simply meritless. The Court ultimately rejected Plaintiffs' arguments and held that the CDA precluded any *Bivens* claim based on the Bus Contract. *Storms*, 2015 WL 1196592, at *12. Plaintiffs' desire to re-argue that

issue is not a proper basis for granting reconsideration. *See Analytical Surveys, Inc.*, 684 F.3d at 52 ("Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' . . . ." (alteration in original) (quoting *Sequa Corp.*, 156 F.3d at 144)). Because Plaintiffs do not otherwise point to any controlling law or facts overlooked by the Court, the Court will not grant reconsideration based on this argument.[8]

### 2. The Court did not overlook controlling law in determining that the Bus Contract claim was governed by the CDA

Plaintiffs attempt to re-litigate the merits of their *Bivens* claim as to the Bus Contract claim by asserting that the Court overlooked controlling authority in finding that the CDA precluded their *Bivens* claim. Specifically, Plaintiffs assert that the Second Circuit's decision in

---

[8] Even accepting Plaintiffs' assertion that the Court *sua sponte* raised the first prong of the two-part test after the parties only argued as to the second prong, Plaintiffs can point to no controlling law suggesting this was improper. Under controlling law, given the narrow applicability of *Bivens*, the Court was required to evaluate the first prong of the two-part test to determine whether the CDA was a pre-existing remedial scheme that precluded extending *Bivens* to Plaintiffs' claims. *Atterbury*, --- F.3d at ---, 2015 WL 6684236, at *3 ("[A] court *must* determine 'whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" (emphasis added) (quoting *Wilkie*, 551 U.S. at 550)); *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671–72 (2d Cir. 2013) ("[I]f the conduct at issue already is 'governed by comprehensive procedural and substantive provisions [of law] giving meaningful remedies against the United States,' then it is 'inappropriate' for courts 'to supplement that regulatory scheme with a new judicial remedy.'" (quoting *Bush v. Lucas*, 462 U.S. 367, 368 (1983))). Furthermore, while the Court assessed the parties' arguments regarding the CDA's remedial scheme and concluded that Plaintiffs' Bus Contract Claim failed at the first prong of the *Bivens* test, *Storms*, 2015 WL 1196592, at *12 n.16, the CDA's remedial scheme is relevant to both prongs of the two-part *Bivens* test, *see Atterbury*, --- F.3d at ---, 2015 WL 6684236, at *4 (concluding that although the CDA's remedial scheme would not categorically bar a *Bivens* claim where a third-party, and not the plaintiff, could bring a CDA claim, "the existence of the CDA's remedial scheme" still constituted "a special factor counseling hesitation at the second step of the *Wilkie* test"); *Snell*, 712 F.3d at 676 ("[I]n enacting the [CDA], Congress created a comprehensive scheme for securing relief from the United States for any disputes pertaining to federal contracts. The existence of that statutory scheme precludes [the plaintiff] from pursuing *Bivens* claims . . . ."). This is not a basis to reconsider the Court's March 16, 2015 Decision.

*Snell* makes the CDA inapplicable to the Bus Contract claim, and therefore the Court improperly dismissed the claim, since the termination of the Bus Contract was unrelated to the performance of the Bus Contract.  (Pls. Mem. 7–8.)

In the March 16, 2015 Decision, the Court explained that, as an issue of first impression, the Second Circuit in *Snell* addressed whether the availability of relief under the CDA precludes *Bivens* claims.  *Storms*, 2015 WL 1196592, at \*9 & n.10 (citing *Snell*, 712 F.3d at 668).  In *Snell*, the Second Circuit concluded that claims relating to the performance of government contracts are governed by the CDA's comprehensive remedial scheme, rather than by a newly-created *Bivens* action.  *Id.* at \*9 (citing *Snell*, 712 F.3d at 672–73).  As stated in the March 16, 2015 Decision, to determine "whether [the] Bus Contract claim is governed by the comprehensive scheme of the CDA, and thus, inappropriate for a *Bivens* remedy as proclaimed by the Second Circuit in *Snell*, the Court considers the 'source of the rights' on which Plaintiffs base their claim and 'the type of relief sought (or appropriate).'"  *Storms*, 2015 WL 1196592, at \*10 (quoting *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 375 (2d Cir. 1999)); *see also Atterbury v. U.S. Marshals Serv.*, --- F.3d ---, ---, 2015 WL 6684236, at \*5 (2d Cir. Nov. 3, 2015) (applying the "source of rights" and "type of relief sought" test to determine whether APA claim was "in essence a contract claim").  Ultimately, the Court held that based on "the source of the Plaintiffs' right to payment — the Bus Contract — and the remedy sought — monetary damages for non-payment under the Bus Contract — . . .  both [were] contractual," and the claim was governed by the CDA.  *Storms*, 2015 WL 1196592, at \*12.

Seeking reconsideration of the March 16, 2015 Decision, Plaintiffs point to footnote three in *Snell*, where the Second Circuit rejected the argument that, based on *Navab-Safavi v. Broadcasting Bd. of Governors*, 650 F. Supp. 2d 40 (D.D.C. 2009), the CDA did not apply to the

claims in *Snell*. *See Snell*, 712 F.3d at 675 n.3 (citing *Navab-Safavi*, 650 F. Supp. 2d at 68–69)).

In rejecting the plaintiff's argument based on *Navab-Safavi*, the Second Circuit explained that

the *Navab-Safavi* court found the CDA inapplicable to a contract termination claim because the

contract was terminated because of one party's alleged participation in a protest music video and

was "not even arguably related to performance of the [contract]." *Id.* (citing *Navab-Safavi*, 650

F. Supp. 2d at 68–69). The Second Circuit refused to address the plaintiff's arguments based on

*Navab-Safavi* because, unlike *Navab-Safavi*, the claims at issue in *Snell* "relate[d] directly and

exclusively to the performance of [the plaintiff's] government contracts." *Id.*

Citing footnote three from *Snell*, Plaintiffs assert that the real holding of *Snell* is that "the

CDA applies only to contract terminations tied 'directly and exclusively to the *performance*' of a

contract" and that the Court overlooked *Snell*'s true holding. (Pls. Mem. 6 (quoting *Snell*, 712

F.3d at 675 n.3).) In seeking to re-litigate a central question resolved in the March 16, 2015

Decision — whether Plaintiffs' Bus Contract-related *Bivens* claims were contract claims

precluded by the CDA's alternative, existing process — Plaintiffs merely point to Second Circuit

precedent previously considered by the Court, which is not a basis for the Court to reconsider its

March 16, 2015 Decision.

The footnote in *Snell* that Plaintiffs rely on, contrary to Plaintiffs' claim, is not the "true

holding" of *Snell* and is not controlling law that the Court overlooked. In the footnote, the

Second Circuit distinguishes *Navab-Safavi*. In doing so, the Second Circuit explained that

because the claims in *Snell* "relate[d] directly and exclusively to the performance of its

government contracts," analogy to *Navab-Safavi*'s claims that were not even arguably related to

contract performance was inapposite. *See Snell*, 712 F.3d at 675 n.3. Moreover, Plaintiffs raised

this precise argument about *Navab-Safavi* in their opposition to Defendants' motion to dismiss,

citing the same footnote from *Snell* to argue that their claims were different than the claims in *Snell* and not precluded by the CDA's remedial scheme. (Pls. MTD Opp'n 25–26 (citing *Snell*, 712 F.3d at 675 n.3).) On a motion for reconsideration, Plaintiffs can neither re-litigate old arguments rejected by the Court, nor raise new arguments. *See Premium Sports Inc.*, No. 10-CV-3753, 2012 WL 2878085, at *1 (S.D.N.Y. July 11, 2012) (Reconsideration does not "present an occasion for repeating old arguments previously rejected or an opportunity for making new arguments that could have previously been made." (citations, alteration and internal quotation marks omitted)). The Court will not reconsider its March 16, 2015 Decision on this basis.

> ### 3. The Court did not overlook controlling law as to the legal standard governing the motion to dismiss the Bus Contract claim

Plaintiffs also argue that in finding that the CDA applied to the Bus Contract claim, the Court applied the wrong legal standard on the motion to dismiss by failing to accept the Complaint's allegations as true. (Pls. Mem.7–10.) According to Plaintiffs, instead of accepting the allegations that the Bus Contract was terminated because of the Debarment, the Court improperly concluded that the Bus Contract was terminated for contract performance and therefore governed by the CDA. (Pls. Mem. 9–10.) These arguments provide no grounds for reconsideration.

In its March 16, 2015 Decision, the Court recounted Plaintiffs allegations that "after the Debarment, [Defendants] 'expanded the conspiracy [against Plaintiffs] by instructing Defendant Vogt and Defendant Monteleone to keep Plaintiffs' para-transit bus . . . and refuse to pay the Plaintiffs for the bus in order to intentionally violate Plaintiffs' Fifth Amendment constitutional rights and to intentionally inflict emotional distress on the Plaintiffs.'" *Storms*, 2015 WL 1196592, at *10 (second and third alterations in original) (quoting SAC ¶ 123). Accepting these allegations, the Court applied the controlling law in this Circuit and considered "the 'source of

the rights' on which Plaintiffs base[d] [the Bus Contract] claim and 'the type of relief sought (or appropriate).'" *Id.* at *10 (first citing *Snell*, 712 F.3d at 675 and then *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 375 (2d Cir. 1999)).  The Court concluded that while Plaintiffs styled the Bus Contract claim as a procedural due process violation based on the Debarment, Plaintiffs were complaining that Defendants failed to pay them pursuant to the Bus Contract and were seeking monetary damages under the Bus Contract.  *Id.* at *11–12.  Applying the Second Circuit's approach in *Snell*, the Court determined that the "source of rights" for, and remedies sought from, the Bus Contract claim, revealed that the claim was contractual and therefore governed by the CDA.  *Id.* at *12.  Accordingly, the Court declined to extend *Bivens* to the Bus Contract claim.  *Id.*

Plaintiffs fail to identify any controlling law that the Court overlooked in reaching its decision to dismiss Plaintiffs' *Bivens* claim related to the Bus Contract.  Although Plaintiffs assert that the Court misapplied the standard on a 12(b)(6) motion, that argument misreads the March 16, 2015 Decision and misconstrues the 12(b)(6) standard, which requires the Court to accept factual allegations in the complaint, but not legal conclusions.  *See Iqbal*, 556 U.S. at 678; *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 165 (2d Cir. 2015).  Plaintiffs simply raise disagreements with the Court's analysis and conclusion as to the source of the rights underlying their Bus Contract claim, and with the Court's acceptance of their factual allegations but not their legal conclusions, neither of which is a proper basis for reconsideration.[9]  *See S.A.R.L. Galerie*

---

[9]  Indeed, Plaintiffs seem to argue that if a party alleges that the "source of rights" is not contractual in nature, a court must necessarily find that the CDA is inapplicable and does not preclude *Bivens*.  However, a claim's source of rights is a legal determination to be made by the Court accepting the factual assertions in the complaint.  *See Up State Fed. Credit Union*, 198 F.3d at 376.

*Enrico Navarra v. Marlborough Gallery, Inc.*, No. 10-CV-7547, 2013 WL 5677045, at *3 (S.D.N.Y. Oct. 18, 2013) ("[Plaintiffs'] motion for reconsideration is not one in which [they] may reargue those issues already considered when [they] do[] not like the way the original motion was resolved." (citation and internal quotation marks omitted)); *E.E.O.C. v. Bloomberg L.P.*, 751 F. Supp. 2d 628, 651 (S.D.N.Y. 2010) ("[A] mere disagreement with the Court's legal determination is not a valid basis for reconsideration."), *decision clarified on reconsideration*, (Dec. 2, 2010).

### ii.    Claims for the Debarment and the Reconsideration Decision

Plaintiffs also seek to have the Court reconsider the dismissal of their *Bivens* claims that were based on the Debarment and the Reconsideration Decision.[10] (Pls. Mem. 10–20.)  Plaintiffs argue that the Court's determination that a *Bivens* claim was not available given Plaintiffs' ability to raise these claims under the Administrative Procedures Act ("APA") was incorrect because APA review is not available for the Debarment or the Reconsideration Decision, and, as such, the Court must grant reconsideration.  (*Id.*)  As discussed below, Plaintiffs merely disagree with the Court's conclusion, which is not a basis for reconsideration of the March 16, 2015 Decision.

Plaintiffs' current argument that the Debarment and the Reconsideration Decision cannot be reviewed under the APA is the opposite of Plaintiffs' allegations in both the Complaint and the SAC, seeking APA review.  In their original Complaint, Plaintiffs sought APA review and reversal of the Debarment and the CVE Removal Decision.  (Compl. ¶ 38.)  Plaintiffs also sought a temporary restraining order and injunction pursuant to the APA.  (Compl. ¶¶ 39–44.)  Plaintiffs sought the same relief pursuant to APA review in both their Amended Complaint and

---

[10]   Plaintiffs' do not seek reconsideration of the Court's dismissal of their *Bivens* claims based on the CVE Removal Decision.

the SAC, and argued for APA review in seeking their preliminary injunction. (Am. Compl. ¶¶ 129–135, Docket Entry No. 18; SAC ¶¶ 173–180; *see* Sept. 19, 2013 Hr'g Tr. 50:12–14.) At no point in opposing Defendants' motion to dismiss their *Bivens* claims in the SAC did Plaintiffs argue that APA review was unavailable. Instead, Plaintiffs acknowledged, expressly and impliedly, that these decisions were subject to APA review, but strenuously argued that APA review was inadequate because, under the APA, Plaintiffs could not receive damages for the agency's unlawful decisions. *See Storms*, 2015 WL 1196592, at *13, *15 ("Rather than challenge the applicability of the APA to their claims, Plaintiffs argue that the relief available under the APA is insufficient because it does not provide 'retrospective compensation' and they should be afforded *Bivens* relief."). The Court rejected Plaintiffs' argument, finding that the APA constitute[d] an alternative, existing process for the adjudication of these claims," which precluded any *Bivens* remedy. *Storms*, 2015 WL 1196592, at *14–15 ("The Court agrees with the courts that have considered this issue and finds that there is no *Bivens* remedy for a claim that is within the ambit of the APA, as the APA constitutes an alternative, existing process for relief.").

Having failed to prevail on their arguments in opposition to Defendants' motion to dismiss, Plaintiffs now seek to present a new and different argument in their reconsideration motion — asserting that there is no APA review and, therefore, they are entitled to proceed with a *Bivens* claim. Reconsideration is not an opportunity to raise new arguments not previously raised. *See Belfiore v. Procter & Gamble Co.*, --- F. Supp. 3d ---, ---, 2015 WL 6448696, at *2 (E.D.N.Y. Oct. 22, 2015) ("In a motion for reconsideration, a party may not introduce new facts or raise new arguments that could have been previously presented to the court."); *Simon*, 18 F. Supp. 3d at 425 ("[A] motion [for reconsideration] is neither an occasion for repeating old

arguments previously rejected nor an opportunity for making new arguments that could have previously been made." (citation and internal quotation marks omitted)). Plaintiffs are not presenting any facts or controlling law raised and overlooked by the Court in deciding that APA review precludes any *Bivens* remedy for the Debarment and the Reconsideration Decision. Instead, Plaintiffs are advancing a new and contrary argument to their prior arguments as to why they are entitled to recourse under *Bivens*. Plaintiffs had an adequate opportunity to raise these arguments in opposing Defendants' motion, and may not raise these arguments for the first time in support of their motion for reconsideration. *See Simon*, 18 F. Supp. 3d at 425 (A motion for reconsideration is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made." (citation and internal quotation marks omitted)). The Court denies Plaintiffs' motion for reconsideration of the Court's March 16, 2015 Decision as to the denial of their *Bivens* claims for the Debarment and the Reconsideration Decision.

**c. Plaintiffs are not entitled to an interlocutory appeal**

Plaintiffs alternatively seek certification of an interlocutory appeal if the Court denies their motion for reconsideration. (Pls. Mem. 22–24.) While Plaintiffs fail to specify the relevant legal issue to be certified, it appears that Plaintiffs seek certification of the denial of their *Bivens* claims based on the availability of review under the CDA and APA. (Pls. Mem. 22–24.) According to Plaintiffs, these questions should be certified because they satisfy the three statutory factors required for an interlocutory appeal. (Pls. Mem. 23–24 (citing 28 U.S.C. § 1292(b).) As discussed below, Plaintiffs fail to establish any of the statutory prerequisites for certification of an interlocutory appeal and the application is therefore denied.

Pursuant to 28 U.S.C. § 1292(b), a district court may certify an interlocutory appeal of an

order if the court determines that (1) "such order involves a controlling question of law" (2) "as to which there is substantial ground for difference of opinion" and (3) "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

The controlling question of law "must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (quoting *Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007)). Where reversal of the district court's order "would terminate the action," it involves a "controlling" question of law. *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990). Short of a reversal necessitating dismissal, at a minimum, the resolution of the issue should "materially affect the litigation's outcome." *Capitol Records*, 972 F. Supp. 2d at 551 (internal quotation marks omitted) (quoting *In re Enron Corp.*, No. 06-CV-7828, 2007 WL 2780394, at *1 (S.D.N.Y. Sept. 24, 2007)). The issue "'need not affect a wide range of pending cases' as long as it is controlling in the instant litigation." *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 141 (E.D.N.Y. 2015) (quoting *Klinghoffer*, 921 F.2d at 24).

"[A] substantial ground [for a difference of opinion] may exist when '(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit.'" *Baumgarten v. Cty. of Suffolk*, No. 07-CV-0539, 2010 WL 4177283, at *1 (E.D.N.Y. Oct. 15, 2010) (quoting *In re Lloyd's Am. Trust Funds Litig.*, No. 96-CV-1262, 1997 WL 458739, at *5 (S.D.N.Y. Aug. 12, 1997)). "The mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial

ground for difference of opinion." *Capitol Records*, 972 F. Supp. 2d at 551 (quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)).

Lastly, a party may show that an interlocutory appeal would "materially advance" the litigation by "demonstrating that the 'appeal promises to advance the time for trial or shorten the time required for trial.'" *Baumgarten*, 2010 WL 4177283, at *1 (quoting *Transp. Workers Union of Am., Local 100, AFL CIO v. N.Y.C. Transit Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005)). This factor carries particular weight, and it is "closely connected to the first factor." *Capitol Records*, 972 F. Supp. 2d at 551 (citation and internal quotation marks omitted). Ultimately, the party seeking interlocutory appeal has the burden to establish all three section 1292(b) factors. *See In re Facebook, Inc. IPO Sec. and Derivative Litig.*, 986 F. Supp. 2d 428, 475 (S.D.N.Y. 2013) ("The proponents of an interlocutory appeal have the burden of showing that all three of the substantive criteria are met."); *In re Poseidon Pool & Spa Recreational, Inc.*, 443 B.R. 271, 275 (E.D.N.Y. 2010) ("[A]ll three requirements set forth in section 1292(b) must be met for a Court to grant leave to appeal.").

"Interlocutory appeals are presumptively disfavored." *Garber v. Office of the Comm'r of Baseball*, --- F. Supp. 3d ---, ---, 2014 WL 4716068, at *1 (S.D.N.Y. Sept. 22, 2014) (citations omitted); *see Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996) (noting that "[i]t is a basic tenet of federal law to delay appellate review until a final judgment has been entered" and that 28 U.S.C. § 1292(b) "is a rare exception to the final judgment rule that generally prohibits piecemeal appeals"); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 530 (S.D.N.Y. 2014) ("[M]ovants cannot invoke the appellate process as a vehicle to provide early review [even] of difficult rulings in hard cases." (alteration in original) (citation and internal quotation marks omitted)). Mindful that interlocutory appeals are

disfavored, courts "must . . . 'exercise great care in making a § 1292(b) certification,'" *Facebook*, 986 F. Supp. 2d at 475, and "[c]ertification . . . requires 'exceptional circumstances justifying a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Jackson*, 88 F. Supp. 3d at 141 (quoting *Gramercy Advisors, LLC v. Coe*, No. 13-CV-9069, 2014 WL 5847442, at *4 (S.D.N.Y. Nov. 12, 2014)); *see Linde v. Arab Bank, PLC*, 97 F. Supp. 3d 287, ---, 2015 WL 1565479, at *15 (E.D.N.Y. Apr. 8, 2015) ("Interlocutory appeal is not a vehicle to provide early review of difficult rulings in hard cases." (citations and internal quotation marks omitted)).

Here, Plaintiffs have failed to establish that the three section 1292(b) factors support certification of an interlocutory appeal. Whether (1) the CDA covers the Bus Contract claim and (2) APA review precludes the Debarment and the Reconsideration Decision are questions of law capable of resolution with minimal factual development. However, even accepting Plaintiffs' contention that the CDA does not apply and APA review is unavailable, these are not controlling questions of law in this case. Even if the Second Circuit were to conclude that APA review is unavailable for the Debarment and Reconsideration Decision or that the CDA does not apply to the Bus Contract claim, such a decision would not dispose of or streamline this litigation.[11] Thus, allowing an interlocutory appeal would merely result in burdensome piecemeal litigation since Plaintiffs' RICO and Declaratory Judgment Act claims are still being pursued.

Plaintiffs have also failed to establish that there is a substantial ground for a difference of opinion as to the inapplicability of the CDA and the availability of APA review. Plaintiffs assert

---

[11]  Indeed, in dismissing their Second Amended Complaint, the Court granted Plaintiffs leave to file a third amended complaint as to their RICO and Declaratory Judgment Act claims and their APA claims regarding the Reconsideration Decision. *Storms*, 2015 WL 1196592, at *28.

the same arguments made in support of their their motion for reconsideration — that the CDA does not apply to the Bus Contract claim because it was related to the Debarment and that the Debarment and the Reconsideration Decision were discretionary agency actions not subject to APA review.  (Pls. Mem. 10–20, 23–24.)  However, Plaintiffs point to no case law reaching these conclusions.  Indeed, as to their APA review arguments, courts have reached the opposite conclusion.  *See CS-360, LLC v. U.S. Dep't of Veteran Affairs*, 846 F. Supp. 2d 171, 192–95 (D.D.C. 2012) (conducting APA review of denial of SDVOSB status and inclusion in VIP database but remanding for additional information as to the agency's reconsideration and denial decision); *Burke v. U.S. E.P.A.*, 127 F. Supp. 2d 235, 238 (D.D.C. 2001) (noting that debarment "is a discretionary measure" and conducting APA review).  Lastly, given how closely related the first and third prongs are, the same concerns regarding burdensome piecemeal litigation counsel against certification because interlocutory review would not materially advance the litigation. *See Capitol Records*, 972 F. Supp. 2d at 551.

Accordingly, at this juncture, Plaintiffs have failed to show that there is a substantial ground for a difference of opinion warranting an interlocutory appeal.  *See Hart v. Rick's Cabaret Int'l, Inc.*, 73 F. Supp. 3d 382, 396 (S.D.N.Y. 2014) ("[D]efendants fail to demonstrate that there are substantial grounds for a difference of opinion.  Defendants offer no cases — or reasons — that a reasonable person would view the performance fees paid by customers (largely paid in untraceable cash) as anything other than gratuities belonging to the dancer.").

Because Plaintiffs have failed to establish the three prerequisites under 28 U.S.C. § 1292(b), the Court declines to certify an interlocutory appeal.

**III. Conclusion**

For the foregoing reasons, the Court declines to reconsider the March 16, 2015 Decision. The Court also denies Plaintiffs' motion to certify an interlocutory appeal as Plaintiffs have not satisfied the statutory requirements.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: November 20, 2015
        Brooklyn, New York